UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT R. REDLIN[1],

        Plaintiff,

vs.

CAROLYN W. COLVIN[2],
Commissioner of Social Security,

        Defendant.
_____/

Case No: 11-15671

HON. AVERN COHN

**MEMORANDUM AND ORDER ADOPTING
REPORT AND RECOMMENDATION (Doc. 12),
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (Doc. 9)
AND GRANTING THE COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT (Doc. 11)[3]**

**I. INTRODUCTION**

This is a Social Security case. Plaintiff Robert R. Redlin (plaintiff) appeals the final decision of the Commissioner of Social Security (Commissioner) denying his deceased wife

---

[1] On February 7, 2013, plaintiff's attorney filed a "Suggestion of Death" which indicates that plaintiff passed away on October 16, 2012 (Doc. 14). The Suggestion of Death notes that Robert R. Redlin, plaintiff's husband, is the interested party in this case. Accordingly, the motion to substitute party (Doc. 15) is GRANTED and Robert R. Redlin is substituted as plaintiff in this case.

[2] On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social Security and is automatically substituted as defendant in this case.

[3] Although this matter was originally scheduled for hearing, upon review of the papers and agreement of the parties, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Dodie Marie Redlin's (Redlin) application for Social Security disability insurance benefits.[4] Redlin claimed that she was disabled since December 31, 1992, due to weakness, fatigue and lack of stamina.

The parties filed cross motions for summary judgment (Docs. 9, 11). The motions were referred to a magistrate judge (MJ) for a report and recommendation (MJRR). The MJ recommends that plaintiff's motion for summary judgment be denied and that the Commissioner's motion for summary judgment be granted. Plaintiff filed timely objections to the MJRR (Doc. 13) and the Commissioner filed a response (Doc. 18). For the reasons that follow, the Court will adopt the MJRR, deny plaintiff's motion for summary judgment (Doc. 9), grant the Commissioner's motion for summary judgment (Doc. 11), and affirm the Commissioner's decision denying benefits.

## II. BACKGROUND

### A. The Administrative Record

As the parties have not objected to the MJ's recitation of the procedural history and administrative record, the Court adopts that portion of the MJRR as if fully set forth herein. See (Doc. 12). The Court has independently reviewed the administrative record and a summary of the evidence related to Redlin's disability claim follows.

Redlin applied for disability benefits on July 23, 2008 and alleged a December 31, 1992 onset of disability. Redlin was last insured under the Social Security system through September 30, 1997, and she was required to establish that she was disabled on or before

---

[4] Neither party suggests that Redlin's death is related to any of the issues in this case, or, that there is post-hearing medical evidence. Accordingly, the Court will proceed with an analysis of the merits of plaintiff's objections to the magistrate judge's report and recommendation.

that date. The Social Security Administration (SSA) denied Redlin's claim. A video hearing was held before an administrative law judge (ALJ) on December 7, 2010. Redlin and a vocational expert (VE) testified at the hearing.

### 1. Redlin's Testimony

Redlin testified as follows. Her last significant employment was at the end of 1997 (Doc. 7-2, p. 43). Until 1992, she worked in medical billing (Id. at 45). After getting into a car accident, where Redlin suffered from a herniated disc in her back, she was on medical leave for a year (Id. at 46). She explained that when working as a medical biller, she frequently had pain in her back from sitting down in a chair (Id. at 47). She had to stand up every half hour (Id.). Around the same time period, Redlin described one Halloween night where she had trouble standing in line at Little Ceasers when getting a pizza (Id.). She attributed the pain while standing to a bad back and hip (Id.). She testified that at that time, she could walk "around the block" before feeling pain and shortness of breath (Id. at 47-48). At home, Redlin could not do any of the cooking, and she had trouble with laundry and cleaning (Id. at 48). She relied on her husband to do the grocery shopping (Id.). She testified that she could not lift anything heavy and it was "sort of rough" to carry a gallon of milk (Id. at 48). Redlin said she had trouble holding bigger items in her hands because she would "lose grip and they'd fall" (Id. at 49). If Redlin had to do her hair for longer than ten minutes, she testified that her arms would get tired. She also noted that after she stopped working as a medical biller, she worked as a nanny for infants (Id. at 52). Most of the times, Redlin says the infants were sleeping, and she was therefore able to rest (Id.).

Redlin testified that she had surgery on her thyroid but did not go into any detail about the surgery and its effects on her daily life (Id. at 50). She testified that from 1992

3

through 1997, she was constantly tired and fatigued. Even on weekends, she would spend most of the day resting (Id. at 52). She said she was taking "many" medications (Id.).

### 2. The VE's Testimony

A vocational expert (VE) also testified at the hearing after reviewing Redlin's file and listening to her testimony. The VE's testimony follows.

The ALJ asked the VE hypothetically whether there were any jobs available for a person of Redlin's age, education, work experience and skill set who is able to engage in light work (Doc. 7-2, p. 54). The VE testified that 1,000 jobs were available in Michigan as an information clerk, 2,400 jobs were available as an office helper, and 3,400 jobs were available as a counter clerk (Id.). Next the ALJ asked the VE to assume that the hypothetical person needed to be sitting down (Id.). The VE testified that 2,000 jobs were available as a different kind of information clerk, 1,000 jobs were available as a hand packager, and 12,000 jobs were available as a general office clerk (Id.).

### 3. Relevant Medical History of Record

The record before the ALJ also contained Redlin's medical records, which are detailed in the MJRR. A brief summary follows.

In 1985, Redlin was diagnosed with thyroid cancer and had her thyroid removed. She was diagnosed with Multiple Endocrine Neoplasia Type 2 (MEN-2) syndrome.

In 1992, Redlin was involved in a car accident. She underwent surgery for a herniated disc in 1993. The physician who treated Redlin is not currently in practice and Redlin was unable to produce any treatment records relating to her herniated disc.

Throughout 1994, Redlin was treated at the University of Michigan GI Clinic for constipation. She was instructed to take Synthroid and a laxative program was

recommended. Redlin continuously complained that she suffered from abdominal pain; her bowel habits were not improving; and that she began experiencing headaches. She returned to the GI Clinic in 1995 and again complained of constipation. Redlin underwent surgery which required removal of the large intestine to treat a large anterior rectocele.

In late 1996, Redlin underwent a neck exploration surgery. A cancerous lymph node was removed and it was diagnosed as metastatic medullary cancer of the thyroid.

### B. The ALJ's Decision

The MJRR summarizes the ALJ's January 21, 2011 decision denying benefits:

> Plaintiff [Redlin] was 36 years old on the date her insured status expired. Plaintiff previously worked as a file clerk, a retail worker and a nanny. The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity between her alleged disability onset date (Dec. 31, 1992) and her date last insured (Sept. 30, 1997).
> At step two, the ALJ found that Plaintiff had the following "severe" impairments: lumbar root syndrome with herniation of the lumbar disc and MEN-2 type metastatic thyroid cancer.
> At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations.
> Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform: "light work . . . except only occasional climbing of ramps, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling, and no climbing ladders.
> At step four, the ALJ found Plaintiff could not perform her "past relevant work," as she did not have any.
> At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform a significant number of jobs available in the national economy, such as information clerk (1,000 jobs in Michigan), office helper (1,000 jobs) or counter clerk (3,400 jobs).

(Doc. 12, pp. 2-3) (internal citations to record omitted).

The ALJ stated that Redlin's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the RFC finding (Doc. 7-2, p. 16). The ALJ went on to describe how the objective medical evidence supported the RFC finding, which undermined Redlin's credibility (Id. at 16-17). For example, the ALJ noted the following:

> The objective medical evidence of record supports the above-stated residual functional capacity finding. Indeed, an April 1993 CT image of the claimant's lumbar spine demonstrated a lateral herniated disc at L5-S1. Physical examinations of the claimant, from April 1993 and May 1993, showed positive straight-leg-raising bilaterally. The claimant underwent a lumbar laminectomy and excision of the right, L5-S1 disc on May 24, 1993. The progress notes show that the claimant has a history of MEN-2, prior to her date last insured, however, no limitations or symptoms at that time were documented. A December 9, 2006 biopsy revealed the claimant had metastatic medullary cancer of the thyroid.
>
> . . . .
>
> Objective medical evidence inconsistent with the claimant's allegations of disability include physical examinations from April 1993 and May 1993, showing the claimant had no neurological deficits. Additionally, a July 1995 abdomen CT revealed no evidence of any tumor recurrence in the right adrenal bed. Such evidence renders the claimant's allegations of disability less than fully credible.

(Id. at 16-17) (internal citations to record omitted).

### C. Redlin's Appeal

The Appeals Council (AC) declined to review the ALJ's decision. Redlin then brought this action for judicial review, arguing that the ALJ's decision was not supported by substantial evidence. As the MJRR notes, Redlin makes the following arguments: (1) The ALJ erred in according evidentiary weight to a "single decision maker" (SDM); (2) The

6

ALJ's credibility finding is "circular"; (3) The ALJ's factual finding that Redlin did not have any treatment for thyroid cancer prior to her last insured date is false; and (4) The ALJ erred in finding that Redlin was not disabled due to diarrhea.

### III. THE MJRR

The MJRR rejects Redlin's arguments. First, the MJRR explains that Redlin did not cite any opinion from a medical source that contradicts the ALJ's RFC finding. Indeed, the MJRR notes that the "ALJ's ultimate findings were in accord with the medical evidence, not at odds with it" (Doc. 12, p. 10). Second, the MJRR rejects Redlin's argument that she was disabled due to a back condition because she did not present supporting evidence. Third, the MJRR rejects Redlin's argument that she was disabled due to diarrhea or constipation. The MJRR notes that the ALJ's opinion was based on the objective evidence. Finally, the MJRR rejects Redlin's argument that the ALJ made a "circular credibility finding," explaining that the ALJ's credibility determination was supported by the substantial objective evidence.

### IV. STANDARD OF REVIEW

#### A. Objections to MJRR

A district court must conduct a de novo review of the parts of a MJRR to which a party objects. 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id. The requirement that district judges with life tenure conduct a de novo review and be the final arbiters of matters referred to a magistrate judge is jurisdictional. United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985); Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

## B. Commissioner's Disability Determination

Judicial review of a Social Security disability benefits application is limited to determining whether "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. Brainard v. Sec'y of HHS, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." Consol. Edison Co. v. NLRB, 305 U.S. 197, 399 (1938). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of HHS, 987 F.2d 1230, 1233 (6thCir. 1993); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009). The substantial evidence standard is deferential and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference with the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

When determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must take into consideration the entire record as a whole. Futernick v. Richardson, 484 F.2d 647, 649 (6th Cir. 1973). If the Appeals Council declines to review the ALJ's decision, the court's review is limited to the record and evidence before the ALJ, Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993), regardless if the ALJ actually cited to the evidence. Walker v. Sec'y of HHS, 884 F.2d 241, 245 (6th Cir. 1989).

Nonetheless, there is no requirement that the reviewing court discuss all evidence in the record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x. 496, 508 (6th Cir. 2006). Essentially, the court's role is limited to search for substantial evidence that is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff has two objections to the MJRR. First, plaintiff says that the ALJ erred by according evidentiary weight to a SDM in determining Redlin's RFC. This argument does not have any merit. Plaintiff is correct that forms completed by a SDM "are not opinion evidence at the appeal levels." See POMS DI 24510.050. However, as the Commissioner notes, there is no indication that the ALJ considered a SDM's opinion when determining Redlin's RFC. The ALJ did not make any reference to a SDM opinion. Rather, the ALJ stated that the "residual functional capacity assessment is supported by the objective medical evidence of record, the claimant's less than credible allegations of disability, her medication regimen and treatment history, and the claimant's performance of work activity after the alleged onset date" (Doc. 7-2, p. 17). The ALJ expressly noted that the record does not contain any opinion evidence (Id.). The ALJ did not err in her analysis.

Second, plaintiff says the ALJ erred by failing to request Redlin undergo a consultative examination before making a RFC finding. Alternatively, plaintiff says the ALJ should have first submitted the record to a medical consultant or a medical advisor. Plaintiff is mistaken. As the Sixth Circuit has explained, "[t]he residual functional capacity determination is expressly reserved for the Commissioner." Ford v. Comm'r of Soc. Sec.,

114 F. App'x 194, 197 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). Indeed, "[s]uch a determination is part of the disability evaluation." Id. (citing 20 C.F.R. § 404.1546. Further, as the Commissioner correctly notes, plaintiff waived this argument by raising it for the first time in the objections to the MJRR. See United States v. Waters, 158 F.3d 933, 936 (6th Cir. 1988).

## VI. CONCLUSION

For the reasons stated above, the MJRR is ADOPTED, plaintiff's motion for summary judgment (Doc. 9) is DENIED, the Commissioner's motion for summary judgment (Doc. 11) is GRANTED, and the Commissioner's decision denying benefits is AFFIRMED. The ALJ's decision is supported by substantial evidence and will not be disturbed.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: March 29, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 29, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160